# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

KENDRICK STORY,                                                                                    PLAINTIFF
ADC #109934

v.                                          4:20CV00944-JM-JTK

JOHNNIE R. STANSIFER, et al.                                                                    DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge James M. Moody, Jr. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.      The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or

other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

>  Clerk, United States District Court
>  Eastern District of Arkansas
>  600 West Capitol Avenue, Suite A149
>  Little Rock, AR 72201-3325

## **DISPOSITION**

**I.    Introduction**

Kendrick Story ("Plaintiff") is incarcerated at the Cummins Unit of the Arkansas Division of Correction ("ADC"). Plaintiff sued Johnnie R. Stansifer, Brandon Baker, Johnny Turner, Bruce Green, Cornelius Evans, and Jones alleging deliberate indifference to his serious medical needs.[1]  (Doc. No. 2).

To date, Defendant Jones has not been served. Defendants Stansifer, Baker, Turner, Green, and Evans (collectively, "Defendants") now have filed a Motion for Summary Judgment, Brief in Support, and Statement of Facts on the merits of Plaintiff's claims. (Doc. Nos. 50-52). In response, Plaintiff filed a competing Motion for Summary Judgment, Brief in Support, and Statement of Facts. (Doc. Nos. 56-58). Defendants have responded. (Doc. No. 61). After careful consideration, and for the reasons set out below, the Court recommends Defendants' Motion be granted and Plaintiff's Motion be denied.

---

[1] Defendants Stansifer, Baker, Turner, Green, and Evans through their attorney, have answered and supplied their correct names. (Doc. Nos. 12, 33, 39). The Clerk of the Court is directed to change the style of the case to reflect the Defendants' correct names.

2

## II. Plaintiff's Complaint

Plaintiff sued Defendants in their personal and official capacities. (Doc. No. 2 at 1-2). (Id.). According to Plaintiff, Defendant Stansifer called a code 4 when Plaintiff was "alleged to have been unresponsive to verbal commands and could not stand or walk on [his] own. (Id. at 7). When Defendant Stansifer called code 4, nurses were supposed to come from the infirmary to address the issue. (Id.). Instead, Defendants Stansifer, Green, Evans, Turner, Baker, and Jones put Plaintiff in hand and leg restraints and chained him to a "red trash cart." (Id. at 7, 9, 11, 12, 13, 14). Plaintiff says his hands were chained over his head with a pair of leg irons that were placed through the handcuffs. (Id. at 7). Plaintiff maintains Defendants were not trained in the medical field, should not have chained him, should not have transported him, and the mode of transportation should not have been a trash cart. (Id. at 7). He says he sustained injuries to his right wrist, left knee, and lower back during the incident. (Doc. No. 2 at 8). Plaintiff believes Defendants' actions violated his Eighth Amendment rights; his allegations raise the claims of excessive force and deliberate indifference to medical needs. Plaintiff seeks compensatory and punitive damages. (Id. at 15).

## III. Summary Judgment Standard

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997). "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other

citations omitted)). "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. at 1135. Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

In addition, "[a]ll material facts set forth in the statement (of undisputed material facts) filed by the moving party...shall be deemed admitted unless controverted by the statement filed by the non-moving party . . . ." Local Rule 56.1, Rules of the United States District Court for the Eastern and Western Districts of Arkansas. Failure to properly support or address the moving party's assertion of fact can result in the fact considered as undisputed for purposes of the motion. FED. R. CIV. P. 56(e).

### IV.   Discussion

Plaintiff sued Defendants in their official and personal capacities alleging violations of his rights under the Eighth Amendment.

#### A.   Official Capacity Claims

As mentioned above, Plaintiff seeks compensatory and punitive damages. Plaintiff's § 1983 damages claims against Defendants in their official capacities are the equivalent of claims against the State of Arkansas and are barred by Eleventh Amendment. Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989). Accordingly, summary judgment in Defendants' favor on Plaintiff's official capacity claims is appropriate.

B.   **Personal Capacity Claims**

Plaintiff's claims encompass allegations of deliberate indifference to medical needs and excessive force.   Each is addressed separately below.

1.   **Deliberate Indifference to Medical Needs**

The Eighth Amendment prohibits cruel and unusual punishment.  U.S. CONST. AMEND. VIII.   This prohibition gives rise to the government's duty to provide medical care to prisoners. "The government has an 'obligation to provide medical care for those whom it is punishing by incarceration." Allard v. Baldwin, 779 F.3d 768, 772 (8th Cir. 2015) (citing Estelle v. Gamble, 429 U.S. 97, 103 (1976)).   It follows that the "Eighth Amendment proscribes deliberate indifference to the serious medical needs of prisoners."  Robinson v. Hager, 292 F.3d 560, 563 (8th Cir. 2002) (internal citation omitted).   "A serious medical need is 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'"  Schuab v. VonWald, 638 F.3d 905, 914 (8th Cir. 2011) (internal citation omitted).   "Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to respond to prisoner's serious medical needs."  Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997). To succeed on a claim of deliberate indifference to a medical need, a plaintiff must show he had an objectively serious medical need and prison officials had actual knowledge of, but deliberately disregarded, that need.  See Washington v. Denney, 900 F.3d 549, 559 (8th Cir. 2018); McRaven v. Sanders, 577 F.3d 974, 981 (8th 2009).

Defendant Stansifer maintains he found Plaintiff "lying in the middle of the floor towards the back of the barracks with his body stiff and vomit coming from his mouth . . . [his] eyes were

5

red and glossed over, he couldn't respond to verbal commands, and he could not stand or walk on [h]is own." (Doc. No. 50-1 at ¶ 2). Upon finding Plaintiff in this condition, Defendant Stansifer call for help via a Code 4; Defendants Turner and Evans responded. (Id. at ¶ 3). Believing Plaintiff had overdosed on illegal drugs, Defendants cuffed and shackled Plaintiff to a cart normally used to transport trash bins and moved Plaintiff to the infirmary. (Id. at ¶¶ 3-4).

Plaintiff maintains Defendants were deliberately indifferent to his serious medical needs and violated prison protocol when they chained him to the trash cart and took him to the infirmary. According to Plaintiff, Administrative Directive 833 required Defendants to contact the infirmary. (Doc. No. 58 at 2, ¶ 4). The Directive defines medical emergency as "an acute medical problem that threatens life or limb" and gives the example of loss of consciousness. (Id. at 8). The Directive adds "[i]n similar situations, a prudent person would respond by dialing 911." (Id.). Pursuant to the Directive, "[a]ny member of the staff confronted with a Medical Emergency should immediately and directly contact the infirmary." (Id. at 9). Medical staff will respond to the site of the Medical Emergency, and "[i]nmates should usually only be moved at the direction of medical staff." (Id.).

Administrative Directive 833 appears applicable to Plaintiff's situation, but violation of a prison policy, without more, is insufficient to establish liability under 42 U.S.C. § 1983. See Gardner v. Howard, 109 F.3d 427, 430 (8th Cir. 1997). The core issue here is whether Defendants intentionally denied or delayed access to medical care or otherwise interfered with medical care or treatment.

Plaintiff argues Defendant Stansifer was not medically trained, but nonetheless concluded that Plaintiff was under the influence of drugs, resulting in the violation of Plaintiff's Eighth Amendment rights. (Doc. No. 58 at 2, ¶ 5). It is undisputed that Plaintiff's drug tests all were

negative, and no drugs were found on Plaintiff's body or in his property.   (Doc. No. 50-1 at ¶ 6). Plaintiff cites Casey v. Lewis, 834 F. Supp. 1477, 1545 (D. Ariz. Mar 19, 1993), in support of his argument that medically untrained officers cannot make medical decisions.   (Doc. No. 58 at 2, ¶ 5).   In Casey, prison security staff had "inappropriate roles in the medical care system."   Casey, 834 F. Supp. at 1545.   In that case, security staff: conducted health and welfare checks on seriously ill inmates; had authority to overrule medical orders; when no medical staff were on duty, security staff were "force[d] to make medical judgments"; and at times security staff interfered with access to medical care.   Id.   The court found "[s]uch interference can rise to deliberate indifference so that a constitutional violation occurs."   Id. (internal citations omitted).   Casey, then, did not hold as a matter of law that security staff violate the Eighth Amendment in making medical judgments; rather, that court identified the issue as whether there was deliberate indifference, just as this Court did above.   Again, the question here is whether Defendants intentionally denied or delayed access to medical care or otherwise interfered with medical care or treatment.

Defendants submitted the declaration of J.D. Rana, the Unit Drug Coordinator, in support of their Motion.   (Doc. No. 50-2).   According to J.D. Rana, at the time of the incident, "K-2 was a major problem at the ADC."   (Id. at ¶ 4).   Further, in finding Plaintiff lying on the floor, with his body stiff, vomit coming out of his mouth, with eyes red and glossed over, it was reasonable for Defendant Stansifer to conclude Plaintiff was under the influence.   (Id.).   The Court notes that Plaintiff disputes Defendant Stansifer's description of Plaintiff's condition, as explained more below.

Plaintiff disagrees with Defendants' description of Plaintiff's condition on February 11, 2019.   During Plaintiff's deposition, Plaintiff testified that he was having a panic attack at the

7

time of the incident, but that he "was talking to them. That's why [he] was able to inform them of what was going on, but they wasn't trying to hear what I was saying." (Doc. No. 50-6 at 19:6-19:8). But Plaintiff also testified as follows:

> Q: Well, let me ask you something. When you had the panic attack, were you having trouble breathing?
>
> Pl. Yes, ma'am. That was the whole purpose of me being on the floor because I couldn't breathe. I passed out, I believe.
>
> Q: Okay. So you think you may have passed out?
>
> Pl. I think I may have.
>
> Q: Have you passed out before during panic attacks?
>
> Pl. Yes, ma'am. That's why the doctor put me on medication for it, to keep it from happening.

(Id. at 20:12-20:21; 27:13-20).

Based on Plaintiff's own testimony, he believes he passed out. This is consistent with the allegations in Plaintiff's Complaint—Defendant "Stansifer admitted that the plaintiff was unresponsive and could not walk or stand on his own. Security is not trained . . . to move a unresponsive inmate" (Doc. No. 2-1 at 7)—and inconsistent with Plaintiff's deposition testimony that he was able to inform Defendants of what was going on. Plaintiff's testimony that he passed out is also consistent with Defendant Evans's version of the events: that Plaintiff was unresponsive on the floor. (See Doc. No. 50-6 at 24:15-20). Plaintiff testified that in Defendant Evans's 005, Defendant Evans wrote: "I, Sergeant Cornelius Evans, responded to a code four called by Johnie Stansifer in 12B. When I arrived, Inmate Kendrick Story was lying in the middle of the floor close to the back of the barracks with his body stiffened and vomit coming from his mouth." (Id.)

Plaintiff disagrees that he had vomit coming from his mouth, his body was stiff, and his eyes were red and glossed over.

Considering the record as a whole, with the facts viewed in the light most favorable to Plaintiff, no Defendant denied or delayed Plaintiff's medical treatment. Defendant Stansifer believed, rightly or wrongly, that Plaintiff had overdosed. Defendant Stansifer stated that when inmate drug overdose is suspected, "[t]he goal is to get the inmate to the infirmary as quickly as possible." (Doc. No. 50-1 at ¶ 4).

Defendants took Plaintiff directly to the infirmary, and that fact is not in dispute. To the extent Defendant Stansifer concluded Plaintiff was under the influence of drugs, Plaintiff has not shown how this constitutes deliberate indifference to his serious medical needs. While negligence may be an issue, negligence is insufficient to establish liability under § 1983. Plaintiff was taken to the infirmary, where he was placed under observation and had access to medical care.

To the extent Plaintiff alleges deliberate indifference through the act of cuffing and shackling him to the trash cart, Plaintiff again has not established how this constitutes deliberate indifference. Plaintiff maintains he has "been on mental disability for having anxiety attacks and panic attacks" and that he has "an ongoing injury that is going to get wors[e] as [he] get[s] older," which Plaintiff described as degenerative disc disease and arthritis in his Complaint. (Doc. No. 58 at ¶¶ 3, 12; Doc. No. 2 at 8). Plaintiff maintains he had a panic attack on February 11, 2019. But Plaintiff has not established that Defendants knew that he suffered from panic attacks, degenerative disc disease, or arthritis. The Court notes that this situation is distinguishable from Nelson v. Correctional Medical Services, where a woman in labor was shackled. Nelson v. Correctional Medical Services, 583 F.3d 522 (8th Cir. 2009).

Plaintiff has not contested the medical records in evidence. Plaintiff's medical records show not only that he was brought to the infirmary on the cart, but he also apparently left the infirmary on the cart. (Doc. No. 50-3). According to the encounter notes:

9

> Code 4 called via security. Brought to infirmary on red cart via CO x 2 wrists and feet cuffed and non combative with eyes closed but alert SPO2- 95%  P – 71 Breathing nonlabored and steady No medical care need observed sent to observation cell via CO staff. Exited infirmary on cart.

(Doc. No. 50-3 at 2). Medically trained personnel apparently did not remove Plaintiff from the cart after examination.

Plaintiff has not established that any Defendant knew of Plaintiff's history of panic attacks, degenerative disc disease, or arthritis. As such, no Defendant could have been deliberately indifferent to Plaintiff's needs in shackling and cuffing Plaintiff to the trash cart and transporting him on the cart to the infirmary. And Plaintiff has not established any denial, delay, or interference with treatment. As such, summary judgment in Defendants' favor on this claim is appropriate.

### 2. Excessive Force

"After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Jackson v. Gutzmer, 866 F.3d 969, 974 (8th Cir. 2017). The core judicial inquiry in an excessive force claim is whether the force was used in a "good faith effort to maintain or restore discipline, or was instead used maliciously and sadistically to cause harm." Flemons v. Devane, 779 Fed. Appx. 423, 425 (8th Cir. 2019) (per curiam) (citing Wilkins v. Gaddy, 559 U.S. 34, 36-39 (2010)). In making this inquiry, courts consider: "the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of the injury inflicted . . . ." Jackson, 866 F.3d at 974. Pain inflicted during a prison security measure is not cruel and unusual punishment only because in hindsight the degree of force used for security purposes was unreasonable. Ward v. Smith, 844 F.3d 717, 721 (8th Cir. 2016) (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)). Rather, guards will liable only "if they are completely unjustified in using force, i.e., they are using

it maliciously and sadistically.'" Id. (internal citation omitted). "Whether the force used was reasonable is 'judged from the perspective of a reasonable officer on the scene' and in the light of the particular circumstances." Story v. Norwood, 659 F.3d 680, 686 (8th Cir. 2011) (quoting Graham v. Connor, 490 U.S. 386, 396-97 (1989)).

Plaintiff alleges Defendants used excessive force by cuffing and shackling him to the trash cart. The act of restraining Plaintiff in and of itself does not establish excessive force; Defendants must have used force maliciously and sadistically for a violation to have occurred. Defendants used restraints to move Plaintiff to the infirmary where he could receive medical attention. From what can be seen in the video, Plaintiff was handled carefully and moved carefully. (Doc. No. 55). Considering the facts particular to this case, the Court cannot find that any Defendant acted maliciously and sadistically to cause harm. Even if a violation occurred, Defendants are entitled to qualified immunity in connection with Plaintiff's excessive force claim. Pearson v. Callahan, 555 U.S. 223, 232 (2009); see also Saucier v. Katz, 533 U.S. 194, 201 (2001).

### 3. Human Dignity

There is an aspect of Plaintiff's claims that Defendants did not address in detail: human dignity in the context of the Eighth Amendment. Plaintiff's Complaint and Summary Judgment papers make clear that part of the violation he alleges is being transported on a cart normally used to move trash. (Doc. No. 2; Doc. No. 58 at 4, ¶ 8). For example, Plaintiff's says "they looked at me as 'Trash.'" (Doc. No. 58 at 4, ¶ 8). This claim needs to be addressed. Nonetheless, not every slight rises to the level of a constitutional violation.

"By protecting even those convicted of heinous crimes, the Eighth Amendment reaffirms the duty of the government to respect the dignity of all persons." Roper v. Simmons, 543 U.S. 551, 560, (2005). "Prisoners retain the essence of human dignity inherent in all persons. Respect

11

for that dignity animates the Eighth Amendment prohibition against cruel and unusual punishment." Brown v. Plata, 563 U.S. 493, 510 (2011).  The Court of Appeals for the Eighth Circuit found qualified immunity inappropriate where a pretrial detainee was transported for 90 minutes "in a small, unsanitary dog cage . . . with no compelling urgency and other alternatives available . . . ." Morris v. Zefferi, 601 F.3d 805, 812 (8th Cir. 2010).  The cage in question was three feet tall by three feet deep by three-and-a-half feet wide, and the 5'9" plaintiff was forced to sit in the cage with dog feces, dog urine, and dog hair for the 90-minute transport.  Id. at 808.  Human dignity in the context of cruel and unusual punishment was at issue in that case.  In Nelson, the dignity of the woman-in-labor plaintiff also was at play.  Nelson, 583 F.3d at 534.

Based on the record before me, this case does not reach the levels of Nelson and Zefferi.  It is undisputed that the cart used to transport Plaintiff to the infirmary is normally used to transport trash bins.  (Doc. No. 50-1 at ¶ 2; Doc. No. 58-8 at ¶ 8).  From what can be seen in the video and photos in evidence, the cart did not have trash on it when Plaintiff was moved.  (Doc. No. 50-1 at 6, for example; Doc. No. 55).  The video, for example, shows Plaintiff laying on a cart turned on his side, his elbows near his face and wrists at the top of his head, with what appears to be his left leg bent at the knee and pulled half-way toward his stomach, and his right leg stretched out towards the bottom of the cart.  (Doc. No. 55 at 12:29:01 A.M.)  Only Plaintiff is on the cart. The cart is flat, wider that Plaintiff's body, and relatively long.  Nothing in the record establishes when the cart used actually had transported trash, that the cart was covered in waste, that the cart otherwise was unsanitary, or that the cart otherwise was unsafe.  And there is no evidence that Defendants had a faster way or a better way to move Plaintiff to the infirmary quickly.  Under these circumstances, the Court finds no cruel and unusual punishment in the transport of Plaintiff on the

cart. Further, if a violation had occurred, Defendants are entitled to qualified immunity. Pearson, 555 U.S. at 232; see also Saucier, 533 U.S. at 201.

### 4. Summary

In summary, where, as here, Defendants have moved for summary judgment, Plaintiff "was required 'to discard the shielding cloak of formal allegations and meet proof with proof by showing a genuine issue as to a material fact.'" Fatemi v. White, 775 F.3d 1022, 1046 (8th Cir. 2015) (internal citation omitted). Plaintiff has not, however, met proof with proof to establish facts in dispute that would preclude partial summary judgment in Defendants' favor. Wilson v. Miller, 821 F.3d 963, 970 (8th Cir. 2016) (allegations must be substantiated with sufficient probative evidence); Bolderson v. City of Wentzville, Missouri, 840 F.3d 982, 986-87 (8th Cir. 2016) (noting plaintiff's duty to meet proof with proof in affirming summary judgment in defendant's favor). Accordingly, Defendants' Motion should be granted.

## V. Defendant Jones

Plaintiff filed this action on August 17, 2020. (Doc. No. 2). The Court directed service of Plaintiff's claims on Defendant Jones, among others, but summons for Defendant Jones was returned unexecuted with the notation "cannot identify – return." (Doc. No. 4; Doc. No. 23 at 2). On December 29, 2020, the Court directed Plaintiff to further identify Defendant Jones or otherwise provide to the Court an address for service within 60 days. (Doc. No. 26). Plaintiff did neither. To date, Defendant Jones has not been served. As such, Defendant Jones should be dismissed, without prejudice, from this action. Lee v. Armontrout, 991 F.2d 487, 489 (8th Cir. 1993) (per curiam); *see also* Fed. R. Civ. P. 4(m) (providing that any defendant who is not served within ninety (90) days after the filing of the Complaint is subject to dismissal without prejudice).

## VI. Conclusion

IT IS, THEREFORE, RECOMMENDED that:

1. Defendants' Motion for Summary Judgment (Doc. No. 50) be GRANTED;

2. Plaintiff's claims against Defendants Stansifer, Green, Evans, Turner, and Baker be DISMISSED with prejudice.

3. Plaintiff's Motion for Summary Judgment (Doc. No. 56) be DENIED;

4. Defendant Jones be DISMISSED, without prejudice, for lack of service.

5. Plaintiff's Complaint (Doc. No. 2) be DISMISSED.

IT IS SO RECOMMENDED this 14th day of December, 2021.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE